IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
TOM KLEPAC and JOY KLEPAC,        )
                                  )    2:11-cv-00752-GEB-GGH
              Plaintiffs,         )
                                  )
       v.                         )
                                  )    ORDER DISMISSING PLAINTIFF'S
                                  )    CLAIMS, DENYING MOTION TO
CTX MORTGAGE COMPANY, LLC;        )    STRIKE*
MORTGAGE ELECTRONIC REGISTRATION  )
SYSTEMS INC.; WELLS FARGO BANK,   )
N.A.; QUALITY LOAN SERVICE        )
CORP.; LSI TITLE AGENCY INC.;     )
AURORA LOAN SERVICES, INC.; and   )
DOES 1-100, inclusive,            )
                                  )
              Defendants.         )
_____ )
```

Pending are three separate dismissal motions brought by the following Defendants under Federal Rule of Civil Procedure ("Rule") 12(b)(6): Quality Loan Service Corporation ("QLS") and LSI Title Company ("LSI") (collectively "LSI Movants"); Mortgage Electronic Registration System, Inc. ("MERS"), Wells Fargo Bank, N.A., and Aurora Loan Services, Inc. ("Aurora") (collectively "Aurora Movants"); and CTX Mortgage Company, LLC ("CTX"). (ECF Nos. 13, 14, 19.) Each movant seeks dismissal of Plaintiffs' claims alleged under both federal and state law arguing the claims are not viable. Plaintiffs oppose each motion and in the alternative request they be given leave to amend if a motion is granted. CTX also seeks an order under Rule 12(f) striking Plaintiffs' punitive

---

\* This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

1

damages claim and request for attorney fees. (ECF No. 20.) However, this motion is denied as moot because of the decision below on the Rule 12(b)(6) motions.

## I. LEGAL STANDARD

Decision on a Rule 12(b)(6) dismissal motion requires determination "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Id. (citation and internal quotation marks omitted); see also Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555 (2007))(stating "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

## II. REQUEST FOR JUDICIAL NOTICE

The Aurora Movants include in their motion a request that

judicial notice be taken of the following documents, which are publically recorded in Placer County: four Deeds of Trust, recorded February 27, 2004, April 9, 2004, January 27, 2005, and December 29, 2005, respectively; a Notice of Default, recorded March 9, 2010; a Rescission of Notice of Default, recorded June 2, 2010; a Corporate Assignment of Deed of Trust, recorded April 22, 2010; a second Notice of Default, recorded June 2, 2010; a Substitution of Trustee, recorded February 15, 2011; a Notice of Trustee's Sale, recorded February 23, 2011; a Notice of Lis Pendens, recorded March 18, 2011; and a Trustee's Deed Upon Sale, recorded March 28, 2011. (Aurora Movants Req. for Judicial Notice Exs. A-L, ECF No. 16.)

"[G]enerally [review of a Rule 12(b)(6) motion] is limited to the face of the Complaint, materials incorporated into the complaint by reference, and matters of judicial notice." N.M. State Inv. Council v. Ernst & Young LLP, 641 F.3d 1089, 1094 (9th Cir. 2011) (citations omitted). Aurora Movants' judicial notice request is unnecessary for certain documents because Plaintiffs attached them to their Complaint as exhibits. Specifically, Exhibits A-J in the judicial notice request are attached to Plaintiffs' Complaint as Exhibits A-C and E-K and therefore may be considered in ruling on the Rule 12(b)(6) motions. See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) ("[I]n ruling on a Rule 12(b)(6) motion . . . material which is properly submitted as part of the complaint may be considered.").

The remaining documents of which judicial notice is requested are Exhibits K and L, which are publically recorded documents in the Placer County Recorder's Office. A matter may be judicially noticed if it "can be accurately and readily determined from sources whose accuracy

3

cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Since the documents are publically recorded and "the accuracy of these records are not subject to reasonable dispute," the judicial notice request is granted. W. Fed. Sav. & Loan Ass'n v. Heflin Corp., 797 F. Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of documents in a county's public record).

### III. BACKGROUND

Plaintiffs allege that "[o]n or about February 17, 2004, Plaintiffs executed a written first DEED of TRUST and security instrument with [CTX]." (Compl. ¶ 41.) Plaintiffs obtained a $371,600 loan secured by the Deed of Trust on real property located at 6241 Crater Lake Drive, Roseville, California (the "Property"). (Compl. Ex. A.) The Deed of Trust on the loan identifies CTX as the Trustee and MERS as the beneficiary. Id.

Plaintiffs allege they are "the victims of fraud, unlawful and predatory lending and an underlying conspiracy to commit fraud." (Compl. ¶ 15.) Plaintiffs also allege they "fac[e] the pending loss of their home through foreclosure initiated and advanced by Defendants in violation of the notice and standing requirements of California foreclosure law." Id. Specifically, Plaintiffs allege chain of title problems and that Defendants failed "to assist Plaintiffs in their efforts to avoid . . . default . . . of the subject mortgage debt and foreclosure." (Comp. ¶ 43-49, 55.)

On April 22, 2010, an Assignment Deed of Trust was recorded, in which MERS transferred all interest in the Property to Aurora Loan Services, LLC. (Compl. Ex. J.) On June 2, 2010, a Notice of Default was recorded. (Compl. Ex. G.) On February 15, 2011, a Substitution of Trustee was recorded in which QLS replaced CTX as trustee of the

1  Property. (Compl. Ex. H.) On February 23, 2011, a Notice of Trustee Sale
2  was recorded and on March 28, 2011, a Trustee's Deed Upon Sale was
3  recorded. (Compl. Ex. I; RJN Ex. L.)

4  Plaintiffs allege the following claims in their Complaint: breach of security instrument, which includes allegations of violations of the federal Home Ownership Equity Protection Act ("HOEPA"); violation of the Real Estate Settlement Procedures Act ("RESPA"); violation of the Truth in Lending Act ("TILA"); violation of the Fair Credit Reporting Act ("FCRA"); violation of the Civil Racketeer Influenced and Corrupt Organizations Act ("RICO"); fraudulent misrepresentation; breach of fiduciary duty; unjust enrichment; civil conspiracy; quiet title; usury and fraud; and wrongful foreclosure.

### IV. DISCUSSION

**A.   HOEPA and TILA**

Each Defendant argues that the statutes of limitations applicable to Plaintiffs' rescission and damages claims alleged under TILA and HOEPA have expired. (CTX Mot. to Dismiss ("CTX MTD") 4:26-28, 5:1-11; Aurora Movant's Mot. 6:21-23; LSI Movant's Mot. 11:5-6.)

Plaintiffs' allege Defendants violated HOEPA and TILA by failing to make certain disclosures required under the statutes prior to when their loan transactions closed; and, by "[e]ngaging in a pattern and practice of extending credit to Plaintiffs without regard to their ability to pay." (Compl. ¶¶ 64, 84-85.) Plaintiffs further allege they have a legal right to rescind the consumer credit transaction and that Defendants are liable to Plaintiffs for damages. (Compl. ¶¶ 65, 70, 86.)

A borrower's right to rescind a loan transaction under TILA "expire[s] three years after the date of the consummation of the transaction[.]" 15 U.S.C. § 1635(f). "15 U.S.C. § 1635(f) is a three-year

statute of repose, requiring dismissal of a claim for rescission brought more than three years after the consummation of the loan secured by the first [Deed of Trust]." McOmie-Gray v. Bank of America Home Loans, No. 10-16487, - - - F.3d - - -, 2012 WL 390167, at *1 (9th Cir. Feb. 8, 2012) (citing Miguel v. Country Funding Corp., 309 F.3d 1161, 1164 (9th Cir. 2002)). Further, "HOEPA is an amendment of TILA, and therefore is governed by the same remedial scheme and statutes of limitations as TILA." Hamilton v. Bank of Blue Valley, 746 F. Supp. 2d 1160, 1179 (E.D. Cal. 2010) (citation and internal quotation marks omitted). "Consummation" is defined under the statute as "the time that a consumer becomes contractually obligated on a credit transaction." Grimes v. New Century Mortg. Corp., 340 F.3d 1007, 1009 (9th Cir. 2003) (quoting 12 C.F.R. § 226.2(a)(13)).

Since Plaintiffs allege "[o]n or about February 17, 2004, Plaintiffs executed a written first DEED of TRUST and security instrument," Plaintiffs' right to rescission was extinguished under § 1635(f) on or about February 17, 2007. Plaintiffs did not attempt to rescind the transaction under TILA and HOEPA until they filed the Complaint on March 18, 2011. (Compl. ¶¶ 65, 86) Therefore, Plaintiffs' TILA and HOEPA rescission claims are untimely, and since § 1635(f) is a statute of repose, these claims are dismissed against all Defendants with prejudice. See Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under [Rule 12(b)(6)] . . . without notice where the claimant cannot possibly win relief.").

Further, an action under TILA for actual or statutory damages must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). HOEPA damage claims are also subject to

TILA's statute of limitations. See Hamilton, 746 F. Supp. 2d at 1179. "[A]s a general rule[, this] limitations period starts [to run] at the consummation of the transaction." King v. California, 784 F.2d 910, 915 (9th Cir. 1986). Therefore, since Plaintiffs' loan closed "on or about February 17, 2004," the statute of limitations on Plaintiffs' damage claims expired one year from that date.

Plaintiffs allege in their Complaint that the doctrine of equitable tolling suspends the statute of limitations applicable to their TILA and HOEPA damage claims as follows:

> Plaintiffs first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon them in November of 2010. Any applicable statute of limitations should run from this date.

(Compl. ¶ 77, 87.) Further, Plaintiffs argue "[a] lay Plaintiff without legal knowledge as to the aforementioned federal statutes and state causes of action would not have been able to discover what Defendants failed to disclose." (Pl.'s Opp'n Aurora Movant's Mot. 5:8-10.) These allegations and arguments are insufficient to justify finding equitable tolling. "Plaintiffs have offered no factual allegations to show that they were unable to compare the allegedly improper disclosures in the loan documents with the required disclosures under TILA and HOEPA." Wadhwa v. Aurora Loan Servs., LLC, No. CIV. 2:10-3361, 2011 WL 1601593, at *3 (E.D. Cal. Apr. 27, 2011); see also Ahmad v. World Savings Bank, No. 09-520, 2010 WL 1854108, at *2 (E.D. Cal. May 6, 2010) (finding equitable tolling inapplicable since plaintiff failed to allege facts explaining how she was prevented from comparing her loan documents and disclosures with statutory and regulatory requirements to discover alleged disclosure violations). Therefore, Plaintiffs' HOEPA and TILA damage claims are dismissed.

### B. Breach of Security Instrument

Plaintiffs also pled an alternative theory of liability for their breach of security instrument claim, which is premised on allegations that Defendants breached the power-of-sale provision of the deed of trust by improperly initiating foreclosure proceedings. (Compl. ¶¶ 72-74, 76.) The Aurora Movants argue this alternative breach of security instrument claim fails because "Plaintiffs have alleged no breach of the security instrument." (Aurora Movant's Mot. 6:7.) Plaintiffs allege that "[a] valid assignment [to QLS] was never recorded prior to the Notices of Default, which proves the Notice[s] of Default[] were void at their inception and recording." (Compl. ¶ 74.)

"Under California law, a 'trustee, mortgagee or beneficiary or any of their authorized agents' may conduct the foreclosure process by filing a Notice of Default." Wood v. Aegis Wholesale Corp., No. 09-CV-536, 2009 WL 1948844, at *3 (E.D. Cal. July 6, 2009) (quoting Cal. Civ. Code § 2924(a)). The Notices of Default were filed by "Quality Loan Service Corp, as agent for beneficiary." (Compl. Exs. F, G.) "[A]ny of the beneficiary's authorized agents" may file the Notice of Default, and "it is immaterial to the validity of the foreclosure process that [QLS] filed the Notice[s] of Default before [QLS] was officially substituted as trustee." Id. at *4. Therefore Plaintiffs' alternative breach of security instrument claim is dismissed.

### C. RESPA

CTX and Aurora Movants seek dismissal of Plaintiffs' RESPA claim, arguing that "Plaintiffs did not file any action until . . . the statute of limitations had run[,]" and "Plaintiffs have failed to allege any facts to support an equitable tolling of the statute of limitations." (CTX MTD 6:27, 7:1-2; Aurora Movant's Mot. 8:4-7.)

Under 12 U.S.C. § 2614, "[p]rivate parties must bring claims for RESPA violations within one year from the date of the occurrence of the violation. Barring extenuating circumstances, the date of the occurrence of the violation is the date on which the loan closed." Ayala v. World Sav. Bank, FSB, 616 F. Supp. 2d 1007, 1020 (C.D. Cal. 2009) (internal quotation marks and citations omitted); see also Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1195 (E.D. Cal. 2010) ("[C]ourts have considered the 'occurrence of the violation' as the date the loan closed."). "The primary ill that [RESPA] is designed to remedy is the potential for unnecessarily high settlement charges, . . . caused by kickbacks, fee splitting, and other practices that suppress price competition for settlement services. This ill occurs, if at all, when the plaintiff pays for the tainted services, typically at the closing." Jensen, 702 F. Supp. 2d at 1195 (quoting Snow v. First Am. Title Ins. Co., 332 F.3d 356, 359-60 (5th Cir. 2003)).

Here, Plaintiffs' loans closed on or about February 17, 2004. (Compl. ¶ 41, Compl. Ex. A.) The statute of limitations expired one year from that date. However, Plaintiffs did not file their Complaint in this action until March 18, 2011. Plaintiffs argue their Complaint includes allegations equitably tolling the statute of limitations period applicable to their RESPA claim. The referenced allegations and argument are identical to those on which Plaintiffs relied in support of having the statute of limitations period applicable to their HOEPA and TILA damage claims equitably tolled. Plaintiffs' argument and allegations are insufficient to justify finding equitable tolling for their RESPA claim since Plaintiffs "failed to plead any facts demonstrating that [they] could not have discovered the alleged RESPA violations by exercising due diligence." Quiroz v. Countrywide Bank, N.A., No. CV 09-5855, 2009 WL

9

3849909, at *6 (C.D. Cal. Nov. 16, 2009). Therefore, Plaintiffs RESPA claim is dismissed.

**D.   FCRA**

The Aurora Movants seek dismissal of Plaintiffs' FCRA claim arguing "Plaintiffs do not allege that they notified a credit reporting agency of a disputed account or that the credit reporting agency notified any one of the defendants in the disputed account." (Aurora Movant's Mot. 9:12-13.) In addition, the CTX and LSI Movants argue that Plaintiffs fail to allege facts demonstrating the applicability of the FCRA. (CTX MTD 7:23; LSI Movant's Mot. 11:17-19.)

"[T]he FCRA imposes some duties on the sources that provide credit information" to credit reporting agencies ("CRAs"). Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009). The FCRA "confer[s] a private right of action upon consumers and allows them to sue a furnisher of credit information if such furnisher breaches any of the duties enumerated in [15 U.S.C.] § 1682s-2(b)." Clark v. FLA Card Servs., N.A., No. 09-5240, 2010 WL 2232161, at *3 (N.D. Cal. June 3, 2010). The duties imposed by the FCRA under 15 U.S.C. § 1682s-2(b) are "triggered only when a [source of credit information] receives notice of a dispute from a [CRA] that has itself received notice of a dispute from a consumer." Pineda v. GMAC Mort., LLC, No. CV 08-5341, 2009 WL 1202885, at *4 (C.D. Cal. Apr. 30, 2009) (citation omitted); see also Gorman, 584 F.3d at 1154 (stating that 15 U.S.C. § 1682s-2(b) obligations are triggered "upon notice of dispute").

Plaintiffs' FCRA claim comprises the following allegations:
> Defendants qualified as a provider of information to the Credit Reporting Agencies . . . under the [FCRA]. Defendants wrongfully, improperly, and illegally reported negative information as to the Plaintiffs to one or more credit reporting agencies, resulting in Plaintiffs' having negative

10

>                    information on their credit reports and the
>                    lowering of their FICO scores.

(Compl. ¶¶ 89-90.) These allegations are insufficient to state a FCRA claim since Plaintiffs do not allege that they disputed any negative information with a CRA or that notice of such dispute was provided to any Defendant. See Clark v. FLA Card Services, N.A., No. C 09-5240, 2010 WL 2232161, at *3 (N.D. Cal. June 3, 2010) (dismissing the Plaintiff's FCRA claim where the complaint included "no allegations that Plaintiff disputed any charges with any credit reporting bureau or that notice of such dispute was provided to [defendant]"). Therefore, Plaintiffs FCRA claim is dismissed.

**E.   RICO**

Each Defendant also seeks dismissal of Plaintiffs' civil RICO claim, arguing "Plaintiffs do not adequately allege in the Complaint any conduct by Defendants that would constitute a violation of RICO." (LSI Movant's Mot. 15:8-9; Aurora Movant's Mot. 11:11-12; CTX MTD 14:15-19.)

"To state a civil claim for a RICO violation . . . , a plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Rezner v. Bayerische Hypo-Und Vereinsbank AG, 630 F.3d 866, 873 (9th Cir. 2010) (citation and internal quotation marks omitted). An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. § 1961(4). "To establish the existence of . . . an enterprise, a plaintiff must [allege] both . . . an ongoing organization, formal or informal, and . . . that the various associates function as a continuing unit." Odom v. Microsoft Corp., 486 F.3d 541, 552 (9th Cir. 2007) (internal quotations and citation omitted).

Plaintiffs allege the following in their civil RICO claim:

> Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiffs constitutes an "enterprise", with the aim and objective of the enterprise being to perpetuate a fraud upon the Plaintiffs through the use of intentional nondisclosure, material misrepresentation, and creation of the fraudulent loan documents.

(Compl. ¶ 122.) Plaintiffs' allegations do not plausibly show the existence of an enterprise or "various associates [which] function[ed] as a continuing unit." Odom, 486 F.3d at 552. Further, the Ninth Circuit "applie[s] the particularity requirements of [R]ule 9(b) to [averments of fraud in] RICO claims." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989). Plaintiffs' allegations are insufficient to "identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." Id. (internal quotation omitted). Furthermore, Plaintiffs' vague allegation that "exhibits attached to this Complaint, show the false and fraudulent documents" does not meet the requisite specificity required under Rule 9(b). (Compl. ¶ 127.) Therefore, Plaintiffs' civil RICO claim is dismissed.

**F.   Fraud Claims**

Each Defendant seeks dismissal of Plaintiffs' fraudulent misrepresentation, usury and fraud claims (collectively "fraud claims"), arguing that the claims are insufficiently pled. (Aurora Movant's Mot. 11:1-2; LSI Movant's Mot. 12:6-10; CTX MTD 9:4-5, 16:18-22.)

Rule 9(b)'s heightened pleading standard applies to "averments of fraud" in all civil cases, regardless of whether "fraud" is an essential element of the claim. Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103 (9th Cir. 2003). Rule 9(b) prescribes the following standard for alleging fraud or mistake: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake." The required specificity includes the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted). Further, when fraud is alleged against multiple defendants,

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud . . . a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.

Id. at 764-65 (internal quotations omitted).

> Plaintiffs' fraud claims contain the following allegations:
>
> Defendants knowingly and intentionally concealed material information from Plaintiffs which is required by federal and state statutes and regulations to be disclosed to the Plaintiffs both before and after closing. Defendants also materially misrepresented material information to the Plaintiffs with full knowledge of Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.
>
> [T]he subject loan, notes, and mortgage were structured so as to create the appearance of a higher value of real property than the actual fair market value. Defendants disguised the transaction to create the appearance of the lender's being a properly chartered and registered financial institution, authorized to do business and to enter into the subject transaction, when in fact the real party in interest was not disclosed to Plaintiffs, and neither were the various fees, rebates, refunds, kickbacks, profits and gains of the various parties who participated in this unlawful scheme. . . . [T]his fraudulent scheme (which was actually a plan to trick the Plaintiffs into signing what would become a negotiable security used to sell unregulated securities under fraudulent and changed terms from the original notes) was in fact a sham to use Plaintiffs' interest in the real property to collect interest in excess of the legal rate.

(Compl. ¶¶ 94-95, 149-150, 152.)

13

    Plaintiffs' fraud averments do not provide the specificity required by Rule 9(b) since they lack sufficient detail concerning the time, date, and place of the alleged misrepresentations and non-disclosures, and the identity of the individuals who made them. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009) (holding that allegations concerning false representations and non-disclosures are grounded in fraud and subject to Rule 9(b)). Further, Plaintiffs' allegations fail to distinguish among the Defendants.

    Therefore, Plaintiffs' fraudulent misrepresentation and usury and fraud claims are dismissed.

**G. Breach of Fiduciary Duty**

    Each Defendant argues Plaintiffs have not sufficiently pled a breach of fiduciary duty claim. (CTX MTD 10:11-19; Aurora Movant's Mot. 10:23-25, 11:1-2; LSI Movant's Mot. 12:20-24.)

    In California, to state a claim for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship; (2) the breach of that relationship; and (3) damage proximately caused thereby. Roberts v. Lomanto, 112 Cal. App. 4th 1553, 1562 (2003) (quotation omitted). "Breach of fiduciary duty is a tort that by definition may be committed by only a limited class of persons." 1-800 Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568, 592 (2003). As a general rule, "a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender." Oaks Mgmt. Corp. v. Superior Court, 145 Cal. App. 4th 453, 466 (2006). Further, loan servicers typically do not have a fiduciary relationship with borrowers. See Linder v. Aurora Loan Servicing, LLC, No. 2:09-cv-03490, 2010 WL 1525399, at *5 (E.D. Cal. Apr. 15, 2010); Moreno v. Citibank, N.A., No. C-09-5339 CW, 2010 WL 103822, at *3 (N.D. Cal. Mar. 19, 2010).

14

Plaintiffs' fiduciary duty claim contains the following allegations:

> Defendants, by . . . contracting to provide mortgage loan services and a loan program to Plaintiffs which was not only to be best suited to the Plaintiffs given their income and expenses, but by which Plaintiffs would also be able to satisfy their obligations without risk of losing their home, were "fiduciaries" in which Plaintiffs reposed trust and confidence[.]

(Compl. ¶ 102.) These allegations are insufficient to show the existence of a fiduciary relationship between Plaintiffs and any Defendant. See Pajarillo v. Bank of America, No. 10CV937 DMS (JMA), 2010 WL 4392551, at *5 (S.D. Cal. Oct. 28, 2010) (dismissing breach of fiduciary claim based upon identical allegations to those plead in this case). Therefore, Plaintiffs' breach of fiduciary duty claim is dismissed.

**H.   Unjust Enrichment**

Each Defendant also seeks dismissal of Plaintiffs' unjust enrichment claim. (CTX MTD 11:23-27; Aurora Movant's Mot. 10:23-25, 11:1-2; LSI Movant's Mot. 13:20-26, 14:1-2.)

Under California law "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996).

Plaintiffs allege they obtained a loan secured by a Deed of Trust. (Compl. ¶ 41.) None of Plaintiffs' allegations plausibly suggest that a valid contract did not exist between the parties. Therefore, Plaintiffs' unjust enrichment claim is dismissed.

**I.   Quiet Title/Wrongful Foreclosure**

Each Defendant seeks dismissal of Plaintiffs' quiet title and wrongful foreclosure claims, arguing Plaintiffs have not alleged credible

tender of the amount of debt owed, or their ability to tender. (Aurora Movant's Mot. 12:19-21, 13:19; CTX MTD 15:21-22, 18:13-14; LSI Movant's Mot. 18:21-23.)

To state a wrongful foreclosure claim, "a plaintiff must allege a credible tender of the amount of the secured debt . . . ." Roque v. Suntrust Mortg., Inc., No. C-09-00040 RMW, 2010 WL 546896, at *4 (N.D. Cal. Feb. 10, 2010) (citing Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1109 (1996)); see also Guerrero v. Greenpoint Mortg. Funding, Inc., 403 Fed. Appx. 154, 157 (9th Cir. 2010) (upholding dismissal of the plaintiff's wrongful foreclosure claim "because [Plaintiffs] failed to allege actual, full and unambiguous tender of the debt owed on the mortgage").

Further, under California law, "it is well-settled that 'a mortgagor cannot quiet his title against the mortgagee without paying the debt secured.'" Briosos v. Wells Fargo Bank, 737 F. Supp. 2d 1018, 1032 (N.D. Cal. 2010) (quoting Shimpones v. Stickney, 219 Cal. 637, 649 (1934)). Therefore, "to maintain a quiet title claim, a plaintiff 'is required to allege tender of the proceeds of the loan at the pleading stage.'" Id. (quoting Velasquez v. Chase Home Fin., LLC, No. C 10-01641 SI, 2010 WL 3211905, at *4 (N.D. Cal. Aug. 12, 2010)); see also Hensley v. Bank of New York Mellon, No. 10-CV-1316, 2010 WL 5418862, at *3 (E.D. Cal. Dec. 23, 2010) (dismissing a quiet title claim where the plaintiff did "not allege that she has tendered, or is able to tender").

Plaintiffs do not allege credible tender of the amount of debt owed or their ability to tender in their wrongful foreclosure or quiet title claims. Plaintiffs allege the following concerning their ability to tender in their HOEPA claim, which is incorporated by reference into the wrongful foreclosure and quiet title claims: "Upon the true 'lenders'

full performance of its obligations under HOEPA, Plaintiffs shall tender all sums to which the true lender is entitled." (Comp. ¶ 69.) However, "[a] tender must be one of full performance and must be unconditional to be valid." Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 580 (1984) (citations omitted). Since Plaintiffs do not allege credible tender of the amount of debt owed, their wrongful foreclosure and quiet title claims are dismissed.

**J. Civil Conspiracy**

Each Defendant seeks dismissal of Plaintiffs' civil conspiracy claim, arguing, *inter alia*, "Plaintiffs fail to allege any claim." (Aurora Movant's Mot. 14:1-3; LSI Movant's Mot. 14:26-28, 15:1-5; CTX MTD 12:8-12.)

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-11 (1994) (citation omitted). "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." Id. at 511.

Here, all of Plaintiffs' tort claims have been dismissed. Therefore, Plaintiffs' civil conspiracy claim is dismissed.

### VI. CONCLUSION

For the stated reasons, each Defendant's dismissal motion is granted. Plaintiffs are granted ten (10) days from the date on which this order is filed to file a First Amended Complaint in which they address the deficiencies in any claim not dismissed with prejudice. Further, Plaintiff is notified that any dismissed claim may be dismissed with prejudice under Federal Rule of Civil Procedure 41(b) if Plaintiff fails

1 | to file an amended complaint within the prescribed time period.

Dated:  February 27, 2012

_____
GARLAND E. BURRELL, JR.
United States District Judge